IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

HOXBRIDGE INSURANCE COMPANY, INC., a Risk Retention Group;

Plaintiff,

vs.

NETLANE LOGISTICS, INC.,

Defendant.

4:23CV3018

**MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiff's Motion for Summary Judgment. (Filing No. 58.) and Defendant's Motion for Summary Judgment (Filing No. 62.).[1] For the reasons explained below, Plaintiff's Motion for Summary Judgment will be denied, and Defendant's Motion for Summary Judgment will be granted in part and denied in part.

## BACKGROUND

Plaintiff Hoxbridge Insurance Company, Inc. ("Hoxbridge") filed its Complaint, requesting declaratory relief regarding its rights and obligations under a commercial trucking policy of insurance it issued to Defendant Netlane Logistics, Inc. ("Netlane"). (Filing No. 1.) Hoxbridge seeks a determination of its obligation to provide insurance coverage for claims arising from a trucking accident that occurred on February 19, 2022 (the "Collision"), in Seward County, Nebraska. (Filing No. 1.) Hoxbridge asks to exclude all coverage obligations relative to the

---

[1] The Court notes Defendant did not submit a separate statement of material facts along with its summary judgment motion as required by this Court's local rules. *See* NECivR 56.1(a). Rather, Defendant included a statement of facts in its brief. The Court did not penalize Defendant for this omission, but kindly reminds Defendant of its obligation to comply with Court rules in the future.

Collision, including the obligation to provide a defense and indemnification to Netlane. (Filing No. 1.)

The insurance policy at issue (the "Policy") has an MCS-90 endorsement attached in compliance with the financial responsibility requirements under the Motor Carrier Act of 1980, 49 U.S.C. § 10101 *et seq*. (Filing No. 1.) Hoxbridge asserts this Court has jurisdiction pursuant to 28 U.S.C. § 1331 and certain regulations promulgated by the Motor Carrier Act. (Filing No. 1.)

The parties have filed cross-motions for summary judgment. Based on its investigation of the Collision and relevant terms in the Policy, Hoxbridge argues it is entitled to summary judgment finding there is no coverage available under the Policy for Netlane's claim, and Hoxbridge has no duty to indemnify or defend Netlane in litigation arising from the Collision. (Filing No. 59.) Netlane asks this Court to grant summary judgment in its favor finding Hoxbridge owes it a duty to defend and indemnify in the action for personal injuries arising out the Collision or, alternatively, a declaration that Hoxbridge must continue to defend Netlane within the personal injury action and stay Hoxbridge's declaratory action regarding its duty to indemnify, pending the resolution of the underlying personal injury action. (Filing No. 62.) Netlane also seeks a declaration that the MCS-90 endorsement applies to the underlying personal injury action. (Filing No. 72.)

## STATEMENT OF FACTS

Hoxbridge is an insurance corporation organized and existing under the laws of the State of Hawaii, with its principal place of business in Honolulu, Hawaii. (Filing No. 1.) Netlane is an Illinois Corporation with its principal place of business located in Lake Zurich, Illinois. (Filing No. 1.) Hoxbridge issued a Commercial Auto Liability policy, the Policy, with a policy period of October 19, 2021, to October 19, 2022. (Filing No. 1; Filing No. 64-1.) The Policy was negotiated and signed by Netlane in the State of Illinois, and it includes a Form MCS-90 Endorsement for Motor Carrier Policies of Insurance for Public Liability under the Motor Carrier Act of 1980. (Filing No. 63 at 2; Filing No. 64-1.)

Netlane reported a claim to Hoxbridge following a tractor-trailer crash, the Collision, that occurred on February 19, 2022, on Interstate-80 in Seward County, Nebraska involving Netlane's driver, Alfred Nelson ("Mr. Nelson"). (Filing No. 61-5 at 1.) After Netlane reported its claim to Hoxbridge, an investigation commenced. (Filing No. 61-5 at 1.)

According to the Motor Vehicle Crash Report (the "Report"), "Mr. Nelson sideswiped another truck driven by Murat Kilicarslan, causing both trucks to go into the median, cross into westbound traffic, and collide with the guard rail. (Filing No. 61-5 at 83; Filing No. 1-3.)  In addition to damages caused to both trucks, Mr. Kilicarslan complained of back injuries and was transported by ambulance to the hospital." (Filing No. 61-5 at 83.)

The Report found, Mr. Nelson initially left the scene on foot into some trees, but he returned. (Filing No. 1-3 at 2.)  Speed was not considered a factor, but Mr. Nelson's inattention and failure to yield were considered factors in the Collision. (Filing No. 1-3 at 2.)

According to the Report, Mr. Nelson told the Deputy Sheriff investigator Wambold he was paranoid that people were after him, and he created the wreck based on that belief. (Filing No. 61-5 at 84; Filing No. 1-3 at 2.)  Mr. Nelson told the deputy he was trying to kill himself. (Filing No. 61-5 at 84.)  Based on Mr. Nelson's statement and Deputy Wambold's belief that Mr. Nelson was dangerous, Deputy Wambold placed Mr. Nelson in protective custody and transported him to the Lancaster County Mental Health Crisis Center. (Filing No. 60 at 3.)

On October 12, 2022, Mr. Nelson was charged with felony assault and willful reckless driving charges, which is a misdemeanor. (Filing No. 60 at 4; Filing No. 61-7.)  The assault charge was amended from a felony to a misdemeanor on November 22, 2022. (Filing No. 60 at 5; Filing No. 61-8.)  Mr. Nelson pled guilty to third-degree assault and willful reckless driving pursuant to a plea agreement entered on December 1, 2022, and he was later sentenced to supervised probation. (Filing No. 60 at 5; Filing No. 61-9; Filing No. 61-10.)

Relevant portions of the Policy provided:

A.  Coverage

We will pay all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto'.

…

B.  Exclusions

This insurance does not apply to any of the following:

3

> 1. Expected Or Intended Injury
>
> 'Bodily injury' or 'property damage' expected or intended from the standpoint of the 'insured'.
>
> …
>
> DEFINITIONS
>
> A. 'Accident' includes continuous or repeated exposure to the same conditions resulting in 'bodily injury' or 'property damage'.

(Filing No. 64-1 at 18-28.)

The Form MCS-90 that was attached to the Policy also provided certain definitions of terms used in the endorsement:

> Accident includes continuous or repeated exposure to conditions or which results in bodily injury, property damage, or environmental damage which the insured neither expected nor intended. Motor Vehicle means a land vehicle, machine, truck, tractor, trailer, or semitrailer propelled or drawn by mechanical power and used on a highway for transporting property, or any combination thereof. Bodily injury means injury to the body, sickness, or disease to any person, including death resulting from any of these. Property Damage means damage to or loss of use of tangible property.
>
> The insurance policy to which this endorsement is attached provides automobile liability insurance and is amended to assure compliance by the insured within the limits stated herein as a motor carrier of property with Sections 29 and 30 of the Motor Carrier Act of 1980 and the rules and regulations of the Federal Motor Carrier Safety Administration (FMCSA)
>
> In consideration of the premium stated in the policy to which this endorsement is attached, the insurer (the company) agrees to pay, within the limits of liability described herein, any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 ….

(Filing No. 64-1 at 7.)

On July 8, 2022, Hoxbridge issued a reservation of rights letter to Netlane via its claim administrator.[2] (Filing No. 61-5 at 80-82.) The letter stated the Report indicated, "Mr. Nelson may have intended to cause the Accident by purposefully colliding with the truck driven by Mr. Kilicarslan. If it is determined that Mr. Nelson did intend to cause the Accident and collision …, there may be no coverage under the Policy". (Filing No. 61-5 at 81.)

Hoxbridge supplemented its July 8, 2022, reservation of rights letter on November 22, 2022.[3] (Filing No. 61-5 at 83-86.) It stated in part:

> Per the Motor Vehicle Crash Report for the Accident and the recently filed felony assault charges against Mr. Nelson, Mr. Nelson may have intended to cause the Accident by purposefully colliding with the truck driven by Mr. Kilicarslan. As discussed, the Policy excludes damages, both bodily injury and property damage, expected or intended by the insured. If it is determined that Mr. Nelson did intend to cause the Accident and collision with Mr. Kilicarslan, there may be no coverage under the Policy under Exclusion B. 1. for the bodily injury and property damage sustained by Mr. Kilicarslan or under the MCS-90 Endorsement, as it may not constitute an "accident."

(Filing No. 61-5 at 85.)

Following Hoxbridge's investigation of Netlane's claim, it filed its Complaint seeking declaratory relief on February 6, 2023. (Filing No. 1.) Hoxbridge's claim for relief is based on the previously cited relevant provisions of the Policy, and the findings in the Report suggesting Mr. Nelson intended to cause the Collision. (Filing No. 1.) Netlane filed another claim arising out the Collision with its assets insurance company, Unique Insurance Managers, Inc. ("Unique"), and Unique sent two reservation of rights letters indicating it was reserving its rights for the loss based on Mr. Nelson's statement to law enforcement that he intentionally caused the accident because he thought he was being chased. (Filing No. 60 at 7.)

---

[2] Netlane states it never received this letter. (Filing No. 63 at 22; Filing No. 72 at 4).

[3] Netlane states it never received this letter. (Filing No. 63 at 22; Filing No. 72 at 4).

Mr. Nelson testified in an Examination Under Oath ("EUO") that he had been involved in an accident while driving his personal vehicle on March 5, 2022. (Filing No. 61-11 at 6-9.) As a result of that accident, Mr. Nelson suffered extensive injuries and is unable to remember anything from the February 19, 2022, Collision, including how it occurred, what his thoughts were leading up to and immediately following the Collision, what he was doing prior to the Collision, or who he talked to or where he went immediately following the Collision. (Filing No. 61-11 at 10-12.)

Although Mr. Nelson testified he has no reason to dispute the statements in the Report, he is not sure he told the truth when he was questioned by Deputy Wambold because three days later he woke up in a mental health facility. (Filing No. 61-11 at 10.) Mr. Nelson testified he was not the best version of himself with his mental health at the time he spoke to the Deputy because he was in an extreme mental health crisis episode and a place he never wants to return. (Filing No. 61-11 at 10.)

Mr. Nelson does not agree the Report is the best indication of what happened at the time of the Collision. (Filing No. 61-11 at 12.) Mr. Nelson does not believe he created the wreck, and he does not remember telling Deputy Wambold he created it. (Filing No. 61-11 at 10-11.)

The first thing Mr. Nelson remembers after the Collision is waking up in a mental health crisis center in Nebraska in a mental health crisis state of mind. (Filing No. 61-11 at 12-13.) He reached this conclusion based on the Report's statement that the sheriff's deputy took him there instead of jail because Mr. Nelson said he caused the action on purpose. (Filing No. 61-11 at 13.) Mr. Nelson was told he was in an extreme paranoid state and had extreme anxiety. (Filing No. 61-11 at 13.) Mr. Nelson testified he does not take full accountability for the Collision because he may have been going through something mentally. (Filing No. 61-11 at 14.)

On December 15, 2023, Mr. Kilicarslan filed a personal injury complaint against Mr. Nelson and Netlane, seeking damages allegedly arising out of the February 19, 2022, Collision. (Filing No. 64-2.) That action was filed in the Circuit Court of Lake County, Illinois and contains seven separate causes of action. (Filing No. 64-2.) Mr. Kilicarslan's complaint seeks to hold Mr. Nelson and Netlane liable for the plaintiff's injuries under respondeat superior and vicarious liability for the acts and omissions of Mr. Nelson in causing the Collision (Counts I and II); for Netlane's negligent hiring, retention, supervision and entrustment of Mr. Nelson (Counts III, IV,

6

V, and VI); and Netlane's wanton and willful misconduct in its hiring, retention, supervision and entrustment of Mr. Nelson (Count VII). (Filing No. 64-2.)

## DISCUSSION

**Summary Judgment Standard**

Summary judgment is proper if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "The movant bears the initial responsibility of informing the district court of the basis for its motion, and must identify those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011) (quotation omitted). If the movant does so, "the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial." Id.

"On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts." Id. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Id. However, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." Id. "In order to show that disputed facts are material, the party opposing summary judgment must cite to the relevant substantive law in identifying facts that might affect the outcome of the suit." Quinn v. St. Louis Cty., 653 F.3d 745, 751 (8th Cir. 2011) (quotation omitted). "The mere existence of a scintilla of evidence in support of the nonmovant's position will be insufficient; there must be evidence on which the jury could reasonably find for the nonmovant." Barber v. C1 Truck Driver Training, LLC, 656 F.3d 782, 791-92 (8th Cir. 2011) (quotation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Torgerson, 643 F.3d at 1042 (quotation omitted).

Hoxbridge argues it is entitled to summary judgment with respect to both its duty to defend and its duty to indemnify Netlane in Mr. Kilicarslan's personal injury action against Netlane and Mr. Nelson based on the plain language of the Policy excluding coverage for intentional acts. (Filing No. 59.) According to Hoxbridge, the undisputed facts show Mr. Nelson acted intentionally in causing the Collsion; therefore, there is no coverage under the Policy. (Filing No. 59.)

Netlane argues it is entitled to summary judgment regarding Hoxbridge's duty to defend and indemnity in the underlying personal injury action, and a determination that the MCS-90 endorsement applies to the underlying personal injury action. (Filing No. 72.) Netlane also claims it is entitled to a declaration that Hoxbridge waived its right to contest coverage and must indemnify Netlane because Hoxbridge did not properly reserve its rights regarding the underlying personal injury action, or in the alternative, Netlane contends Hoxbridge's duty to indemnify cannot be determined until the personal injury action is resolved. (Filing No. 72.)

Hoxbridge asserts whether it "has a duty to defend Netlane in the Personal Injury Action is effectively a non-issue because Hoxbridge is presently defending Netlane in the Personal Injury Action pursuant to a reservation of rights. What is at issue is whether Hoxbridge has a duty to indemnify Netlane from any judgment resulting from the Personal Injury Action." (Filing No. 71 at 5.) Hoxbridge also "understands and agrees that the purpose of the MCS-90 endorsement 'creates a surety by the insurer to protect the public when the insurance policy to which the MCS-90 endorsement is attached otherwise provides no coverage to the insured.' … However, should Hoxbridge be required to remit payment pursuant to the MCS-90 endorsement, Hoxbridge will seek reimbursement from Netlane." (Filing No. 71 at 6-7.)

**Applicable Substantive Law**

The claim presented in Hoxbridge's complaint involves construction of an insurance policy (the Policy), which is a matter of state law. See *Planet Sub. Holdings, Inc. v. State Auto Prop. & Cas. Ins. Co., Inc.,* 36 F.4th 772, 775 (8th Cir. 2022). The parties agree that Illinois law controls the interpretation and application of the Policy in this case. (Filing No. 63; Filing No. 67; Filing No. 71; Filing No. 72.)

**Duty to Defend**

"In Illinois, an insurer's duty to defend its insured is broader than its duty to indemnify." *National American Insurance Company v. Progressive Corporation and Artisan and Truckers Casualty Company,* 43 F.Supp.3d 873, 879 (N.D. Ill. 2014). "An insurer's duty to defend is determined by comparing the allegations in the underlying complaint to the relevant provisions of the insurance policy. If the allegations in the underlying complaint fall within or even potentially within the policy's coverage, the insurer's duty to defend arises." *Stonegate Insurance Company*

*v. All City Towing, Inc., All City Towing, Inc.*, 2024 Ill. App. (1st) 221769 at 4, --- N.E.3d --- (2024) (citing *LaGrange Memorial Hospital v. St. Paul Insurance Co.*, 317 Ill. App. 3d 863, 869, 251 Ill.Dec. 191, 740 N.E.2d 21 (2000)). "In determining the duty to defend, the underlying complaint must be liberally construed in favor of the insured. So must doubts or ambiguities including exceptions be construed in favor of the insured." *Westfield Premier Insurance Company v. Kandu Construction, Inc., et al.*, 688 F.Supp.3d 737, 742 (N.D. Ill. 2023). "[I]f 'the complaint alleges several causes of action or theories of recovery against an insured,' the duty to defend is triggered if even one of those causes of action or theories of recovery is within the scope of coverage." *National American Insurance Company*, 43 F.Supp.3d at 879 (quoting *Marland Casualty Co. v. Peppers,* 64 Ill.2d 187, 355 N.E.2d 24, 28 (1976)).

In the present case, the complaint at issue was filed by Mr. Kilicarslan against Netlane and Mr. Nelson in Lake County, Illinois. (Filing No. 64-2.) It includes seven counts with many of them having overlapping allegations. (Filing No. 64-2.)

All the counts allege that on February 19, 2022, Mr. Kilicarslan was driving eastbound on Interstate 80 near Exit 388 in Seward County, Nebraska, and at the same time, Mr. Nelson, was also driving eastbound on Interstate 80 in Netlane's semi-truck when he "suddenly failed to maintain his lane and crashed into the side" of Mr. Kilicarslan. (Filing No. 64-2 at 1.) The counts all allege that Mr. Nelson, while acting as a representative, agent, and employee of Netlane, in furtherance of Netlane's business activities, was unfit to be driving a semi-truck, and that Netlane knew Mr. Nelson was an unfit, incompetent, and reckless driver but still entrusted him with a semi-truck that day. (Filing No. 64-2 at 2.) Mr. Nelson committed negligent acts by failing to maintain control of his vehicle; failing to control his speed; failing to keep a proper lookout; failing to maintain his lane; failing to timely apply his brakes; failing to steer to avoid the collision; driving while distracted; failing to warn Mr. Kilicarslan of the collision; and other negligent acts, and as a result of the collision, Mr. Kilicarslan suffered serious injuries. (Filing No. 64-2 at 2-3.)

In addition to the aforementioned allegations, Count I alleges Netlane is liable under the doctrine of respondeat superior for the acts and omissions of its agents and employees, including Mr. Nelson; and alternatively, Netlane is vicariously liable for Nelson's acts and omissions that day pursuant to Federal Motor Carrier Safety Regulations because Netlane is an interstate motor carrier, and Nelson injured Mr. Kilicarslan while operating an interstate carrier vehicle through

9

negligence. (Filing No. 64-2 at 3.) Count II adopts and realleges paragraphs 1-13 from Count I and alleges Mr. Nelson was negligent in failing to maintain a single lane of travel and for disregarding the safety of those on the roadway, including Mr. Kilicarslan. (Filing No. 64-2 at 4.) Mr. Nelson's negligence resulted in a collision between the vehicle he was operating and the vehicle being operated by Mr. Kilicarslan and caused Mr. Kilicarslan to sustain severe permanent injury. (Filing No. 64-2 at 4-5.)

Counts III, IV, V, and VI contain the allegations from paragraphs 1-13 and allegations that Netlane owed certain duties to act with due regard for the safety of Mr. Kilicarslan and others similarly situated to comply with Illinois law; to exercise reasonable care in employing (Count III), supervising (Count V), and entrusting (Count VI) competent drivers for its semi-trucks. (Filing No. 64-2 at 5-9.) Counts III through VI specify how Netlane breached the duties alleged in each count, and they allege that Mr. Kilicarslan's injuries were a foreseeable consequence of hiring, retaining, failing to supervise, and entrusting Mr. Nelson with driving Netlane's semi-truck. (Filing No. 64-2 at 5-9.) Count VII alleges the negligent acts set forth in Counts III through VI were done by Netlane's conscious disregard or indifference for the safety of Mr. Kilicarslan and others, and Mr. Kilicarslan's injuries were proximately caused by Netlane's wanton and willful acts and/or omissions. (Filing No. 64-2 at 10-11.)

Although Hoxbridge is defending Netlane in Mr. Kilicarslan's personal injury action under two Reservation of Rights letters—both of which Netlane claims it did not receive—it argues its duty to provide a defense is not triggered by the complaint's claims of negligence against Netlane "because no coverage exists under the Policy for the Direct Negligence claims." (Filing No. 67 at 3-4.) Netlane argues the allegations in Mr. Kilicarslan's personal injury complaint fall within the terms of the Policy, and therefore, activate Hoxbridge's duty to provide a defense in that action. (Filing No. 72 at 5.)

Liberally construing the allegations in Mr. Kilicarslan's complaint in favor of Netlane, this Court finds Hoxbridge has a duty to defend Netlane. The Policy provides coverage for damages the insured is legally required to pay because of bodily injury or property damage to which the Policy applies caused by an accident and resulting from the ownership, maintenance or use of a covered vehicle. (Filing No. 64-1 at 18-28.) The Policy's insurance does not apply to expected or intended injury. (Filing No. 64-1 at 18-28.) The allegations in Mr. Kilicarslan's complaint fall

10

within the Policy's coverage; therefore, Hoxbridge's duty to defend is triggered, and it must continue to provide a defense in the personal injury action pending in Illinois.

**Waiver of Right to Contest Coverage**

When an insurer believes that the potential liability is not covered by its insurance policy, it has two options: "(1) defend the lawsuit under a proper reservation of rights, or (2) secure a declaratory judgment about its obligations under the policy prior to trial." *Utica Mut. Ins. Co. v. David Agency Ins., Inc.,* 327 F.Supp.2d 922, 927-28 (N.D.Ill.2004). Netlane argues Hoxbridge waived its right to deny coverage because Hoxbridge did not properly reserve its rights regarding Mr. Kilicarslan's personal injury action; therefore, Hoxbridge has a duty to indemnify Netlane in that action. (Filing No. 72 at 3-5.)

"Absent a reservation of rights, an insurer waives all questions of policy coverage when it assumes an insured's defense." *Illinois Insurance Guaranty Fund v. Nwidor,* 2018 IL. App (1st) 171378, 423 Ill. Dec. 624, 635, 105 N.E. 3d 1035, 1043 (2018). Whether an insurer has waived the issue of policy coverage is generally a question of fact and cannot be decided as a matter of law unless there is no dispute as to the material facts and only one inference can be drawn therefrom. *Id.*

Netlane asserts, "To date, Netlane has not received any reservation of rights or explanation of coverage from Hoxbridge regarding the Personal Injury Action and/or Hoxbridge's assignment of legal defense counsel within the Personal Injury Action." (Filing No. 63 at 5.) Netlane contends because it "was never informed of Hoxbridge's intent to reserve its rights regarding the Direct Negligence claims … [and because] Hoxbridge's supposed reservation of rights letter, which was purportedly mailed to Netlane but never received," it was not fully advised of Hoxbridge's intentions regarding its defense of the personal injury action filed in Illinois. (Filing No. 72 at 4.)

According to Netlane, "Hoxbridge has never provided Netlane with any analysis, declination, or reservation of coverage regarding the Personal Injury Complaint or the claims of Direct Negligence asserted therein. As such, Netlane can only assume that Hoxbridge does not intend to contest its coverage obligations regarding the Personal Injury Complaint." (Filing No. 63 at 16.) Netlane argues those reasons establish as a matter of law Hoxbridge's waiver of its right to contest all questions of coverage. (Filing No. 63 at 16.)

11

Netlane further argues Hoxbridge failed to communicate its coverage position as to Mr. Kilicarslan's personal injury action notwithstanding the two reservation of rights letters Hoxbridge sent in 2022 and the present action before this Court. (Filing No. 72 at 3-4.) Netlane claims it never received those letters, and Hoxbridge did not reassert its reservation of rights after it assigned defense counsel for Mr. Kilicarslan's action in Illinois. (Filing No. 72 at 4.) According to Netlane, "Hoxbridge's actions and inactions constitute a waiver of its rights to contest all questions of coverage." (Filing No. 72 at 4.)

Netlane's waiver argument presents a question of fact, and the record before this Court is disputed as to whether Netlane received the reservation of rights letters that Hoxbridge sent in 2022. Consequently, this Court will not grant summary judgment declaring Hoxbridge waived its right to contest coverage under the Policy at issue and therefore has a duty to indemnify Netlane in Mr. Kilicarslan's action.

**Duty to Indemnify**

While an insurer's duty to defend is much broader than its duty to indemnify, a finding that an insurer has "a duty to defend does not necessarily mean it ha[s] a duty to indemnify." *National American Insurance Company*, 43 F.Supp.3d at 882. Hoxbridge argues it has no duty to indemnify Netlane in Mr. Kilicarslan's personal injury action because the evidence shows Mr. Nelson intentionally caused the Collision, which is sufficient to trigger the Policy's exclusion for bodily injury or property damage expected or intended from the standpoint of the insured. (Filing No. 71 at 2.) Netlane contends Hoxbridge's duty to indemnify cannot be determined until the personal injury action is resolved because Mr. Nelson's mental state and intent are disputed and present questions of material fact that are being litigated in Mr. Kilicarslan's personal injury action. (Filing No. 70 at 5-7.)

"Intent, as it applies to an exclusionary clause in an insurance policy, means the actor desires to cause the consequences of his action or believes the consequences are substantially certain to result from it." *Western States Ins. Co. v. Kelley-Williamson Co.*, 211 Ill.App.3d 7, 12, 155 Ill.Dec. 678, 681, 569 N.E. 1289, 1292 (1991).

> [A] subjective standard is applied when determining intent as it applies to an exclusionary clause in an insurance policy. Each case should be reviewed to

> determine the extent of the particular party's incapacitation as it relates to his ability to form intent. However, this is a factual question to be resolved by the trier of fact.

*Id.*, 211 Ill.App.3d at 13, 12 155 Ill.Dec. at 681, 569 N.E. at 1292 (internal citations omitted).

In *Western States*, the individual defendant (Derwant), in a suicide attempt, drove his truck into a gas station owned by his codefendant, Kelley-Williamson Company (Kelley). Kelley filed an action against Derwent seeking damages it incurred because of Derwent's collision. The plaintiff insurer (Western States) brought a declaratory judgment action against Derwent and Kelley, alleging it was not liable to defend Derwent or pay any judgment under its insurance agreement because the insurance policy excluded coverage for intentional acts. Kelley and Derwent argued Derwent was insane at the time of the collision and could not have acted intentionally. Following a bench trial in the declaratory judgment action, the trial court found Western States was required to provide coverage to Derwent under the insurance policy at issue because:

> 'Derwent was incapable of exercising free will at the time which is an essential element of specific intent.' Additionally, the court found Derwent 'was clinically psychotic and legally insane at the time of the occurrence … and was thereby incapable of having [the] necessary intent required under the insurance policy issued by the plaintiff to exclude him from coverage.' This language expresses the court's finding that the degree of mental illness suffered by Derwent was extreme. The court's findings were based upon a thorough review of the evidence presented.

*Id.,* 211 Ill.App.3d at 13, 12 155 Ill.Dec. at 682, 569 N.E. at 1293. After reviewing that same evidence, the appellate court affirmed the trial court's decision. *Id.*

The facts underlying the Collision and the issue presented for determination in the case at bar are similar to those in *Western States*. However, at this stage in the proceedings, the Court cannot declare as a matter of law whether Hoxbridge has a duty to indemnify Netlane in Mr. Kilicarslan's personal injury action because whether the Collision was intentional presents a material question of disputed fact. Therefore, Hoxbridge's Motion for Summary Judgment must be denied.

13

Until the facts in the underlying personal injury action in Illinois are resolved, a determination cannot be made as to whether Hoxbridge has an obligation to indemnify Netlane. If this court were to proceed, it could result in inconsistent verdicts. Thus, the remainder of the declaratory judgment action concerning Hoxbridge's duty to indemnify will remain stayed until the underlying personal injury action is concluded.

As Hoxbridge has acknowledged, if a judgment is rendered against Netlane in the Illinois action, and it is subsequently determined Hoxbridge has no duty to indemnify Netlane under the Policy's exclusion for intentional injuries, the MCS-90 endorsement will apply to satisfy any judgment awarded in the Illinois action, and thereafter, Hoxbridge may seek reimbursement from Netlane as provided in the terms of the MCS-90 endorsement. (Filing No. 71 at 6-7.) Therefore, Netlane's request for summary judgment is granted on the issue of the application of the MCS-90 endorsement to Mr. Kilicarslan's action in Illinois.

## CONCLUSION

For the reasons stated herein, the Court denies Hoxbridge's Motion for Summary Judgment (Filing No. 58) and grants in part Netlane's Motion for Summary Judgment. (Filing No. 62.) The Court declares that Hoxbridge has a duty to defend Netlane in the personal injury action filed against it and Mr. Nelson in the Circuit Court of Lake County, Illinois; that Hoxbridge's Declaratory Judgment Complaint is stayed as to whether it has duty to indemnify Netlane until the Illinois action is resolved; that if it is subsequently determined Hoxbridge has no duty to indemnify Netlane under the Policy's exclusion for intentional injuries, the MCS-90 endorsement applies to any judgment Hoxbridge is required to pay in the Illinois action; and thereafter, Hoxbridge may pursue reimbursement from Netlane as provided in the terms of the MCS-90 endorsement. The pretrial conference and trial are canceled. The parties shall submit status reports to the Court as to the progression of the case in Illinois every 180 days until further order of the Court. The first status report is due October 8, 2025. The Clerk of Court is directed to close this case for statistical purposes.

**IT IS SO ORDERED.**

Dated this 11th day of April, 2025.

BY THE COURT:

*Susan M Bazis*
Susan M. Bazis
United States District Judge